# EXHIBIT C

CM-010

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Molly E. Hoot  s/b #179532<br>Lipeles Law Group, APC<br>880 Apollo St., Ste. 336<br>El Segundo, CA  90245<br>TELEPHONE NO.: (310) 322-2211  FAX NO.: (310) 322-2252<br>ATTORNEY FOR *(Name):* Alexis Brittany Lawrence Marshall | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**07/09/2025**<br>**Clerk of the Court**<br>BY: WILMA CORRALES<br>Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister St
MAILING ADDRESS: 400 McAllister St
CITY AND ZIP CODE: San Francisco, CA  94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Lawrence Marshall, Alexis Brittany v. United Airlines, Inc. et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC-25-627086**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify):* Eighteen
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 9, 2025

Molly E. Hoot
(TYPE OR PRINT NAME)

▶ *Molly Hoot*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **DEC 10, 2025** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610**<br>**400 McAllister Street**<br>**San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at https://sf.courts.ca.gov under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

---

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**adrcoordinator@sftc.org**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



**Superior Court of California, County of San Francisco**
**Information Sheet**
**Voluntary Expedited Jury Trial Summary**

The San Francisco Superior Court encourages the use of Voluntary Expedited Jury Trials ("EJTs") in appropriate cases.  EJTs provide an excellent opportunity to resolve your client's case in an expeditious and inexpensive way.  Voluntary EJTs are authorized by statute.  CCP §§ 630.01.

EJTs can resolve your entire case **or** a single important case critical issue that, once adjudicated, can promote resolution of the entire case (for example: course and scope of employment, causation of an injury, whether a contract was formed, etc.)  EJTs promote equal access to civil justice as they are less expensive, consume fewer courtroom days, provide flexibility throughout, encourage high/low agreements to limit risk, and feature streamlined pre-trial procedures.

These are highlights of an EJT (C.C.P. §§ 630.01 et seq. and Rules of Court 3.1549 - 3.1553):

- Parties encouraged to submit a joint jury questionnaire;

- 8 jurors (6 must agree);

- 3 peremptory challenges per side;

- 5-hour time limit per side <u>unless agreed otherwise and approved;</u>

- One to two court days completion <u>unless agreed otherwise and approved;</u>

- Option to present evidence by stipulation and objection;

- High/low arrangement option;

- Limited appeal (misconduct by judge or jury substantially affecting parties' rights or corruption, or bad faith.)

If the parties agree to the Voluntary EJT, they should file and serve the completed and signed (Proposed) Consent Order for Voluntary Expedited Jury Trial, Judicial Council Form EJT-020.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

UNITED AIRLINES, INC., a Delaware corporation; and DOES 1
through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALEXIS BRITTANY LAWRENCE MARSHALL, an individual

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*  San Francisco County Superior Court

400 McAllister St, San Francisco, CA 94102

**CASE NUMBER:**
*(Número del Caso):*

**CGC-25-627086**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
 Molly E. Hoot, Lipeles Law Group, APC, 880 Apollo St., Ste. 336, El Segundo, CA 90245 310-322-2211

DATE: **07/10/2025**                                      Clerk, by **WILMA CORRALES**                       , Deputy
*(Fecha)*                                                 *(Secretario)*                                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1   Thomas H. Schelly (Bar No. 217285)
    Molly E. Hoot (Bar No. 179532)
2   LIPELES LAW GROUP, APC
    880 Apollo Street, Suite 336
3   El Segundo, California 90245
    Telephone: (310) 322-2211
4   Fax: (310) 322-2252
    Email: molly@kallaw.com
5

6   Attorneys for Plaintiff,
    ALEXIS BRITTANY LAWRENCE MARSHALL

7

ELECTRONICALLY

**F I L E D**

*Superior Court of California,*
*County of San Francisco*

**07/22/2025**
**Clerk of the Court**
BY: RONNIE OTERO
Deputy Clerk

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **COUNTY OF SAN FRANCISCO**

10

11  ALEXIS BRITTANY LAWRENCE          **CASE NO.: CGC-25-627086**
    MARSHALL, an individual,          *[Assigned for all purposes to Hon. Rochelle*
12                                    *C. East, Dept. 610]*
                Plaintiff,
13

14  vs.                               **NOTICE OF RULING**

15  UNITED AIRLINES, INC., a Delaware
    corporation; and DOES 1 through 100,
16  inclusive,

17                                    Action filed: July 9, 2025
                Defendants.           Trial Date:   None Set
18

19

20  TO ALL PARTIES AND TO THEIR ATTORNEYS:

21          PLEASE TAKE NOTICE that, pursuant to the directive of the San Francisco County

22  Superior Court, attached hereto as Exhibit A is a copy of the Order Re Sanctions issued in

23  *Quinteros v. Harbor Distributing, LLC*, Case No. CGC-24-620226, currently pending in

24  Department 304 of this Court.

25  ///

26  ///

27  ///

28

                                                                                          1
                                    **NOTICE OF RULING**

This notice is being provided in accordance with the Court's order requiring disclosure in all matters in which our firm appears before the San Francisco County Superior Court.

LIPELES LAW GROUP, APC

Date: July 22, 2025

By: _Molly Hoot_____
         Molly E. Hoot
         Thomas H. Schelly
         Attorneys for Plaintiff
         ALEXIS BRITTANY LAWRENCE MARSHALL

2

**NOTICE OF RULING**

# EXHIBIT A

**FILED**

San Francisco County Superior Court

JUL 16 2025

CLERK OF THE SUPERIOR COURT

By _Felicia Green_

Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| JAIME ARGELIO AMAYA QUINTEROS, an individua, on his own behalf and on behalf of all others similarly situated, | Case No. CGC-24-620226 |
| Plaintiff, | ORDER RE SANCTIONS |
| v. | |
| HARBOR DISTRIBUTING, LLC, a Delaware limited liability company; et al., | |
| Defendants. | |

On July 8, 2025, the Court issued an Order to Show Cause re Sanctions in this case. The Order was issued with regard to Plaintiff's brief in opposition to Defendants' motion to stay pending resolution of related class action, filed June 27, 2025. Having considered the declarations filed by Plaintiff's counsel in response to the Order to Show Cause, and the arguments of counsel presented at a hearing on July 11, 2025, the Court hereby enters its Order sanctioning Plaintiff's counsel and granting other related relief.

### BACKGROUND

This wage and hour action was filed on December 2, 2024, and was amended on February 3, 2025 to add a representative claim under the Private Attorneys General Act, Lab. Code § 2699 *et seq.* (PAGA). On June 13, 2024, Plaintiff's counsel had filed a substantially similar class action and representative PAGA action, *Ascensao v. Harbor Distributing, LLC, et al.*, Los Angeles County Superior Court Case

- 1 -

No. 24STCV14911.  Both cases are filed on behalf of Defendants' current and former California non-exempt employees for a period of four years prior to the filing of the complaint, and both cases assert class and PAGA claims for violations of Labor Code provisions governing overtime, minimum wage, meal periods, failure to maintain records and provide accurate wage statements, failure to allow inspection of records, failure to pay wages due at termination, and derivative claims under the UCL. They are substantially similar: nine of the ten wage and hour claims Plaintiff asserts in this action are already asserted in *Ascensao*, based on the same factual allegations, and the two actions seek the same relief and penalties for those claims; the putative class and aggrieved employees are subsumed within *Ascensao*; and they are brought by the same law firm.

Defendants moved to stay the instant action pursuant to the doctrine of exclusive concurrent jurisdiction, arguing that the instant class and representative action is an "overlapping, duplicate, copycat action" of the earlier action pending in Los Angeles Superior Court.  The motion was based on the doctrine of exclusive concurrent jurisdiction and the Court's inherent authority to manage its docket to avoid multiplicity of suits, duplication of judicial resources, and the risk of inconsistent judgments.  In opposition to the motion, Plaintiff made a single argument: that in order for the doctrine of exclusive concurrent jurisdiction to apply, "[t]he actions must be 'substantially identical' in parties, causes of action, and rights asserted."  (Opposition, 5; *id.* at 7 ["this doctrine is reserved for situations where two actions present substantially identical parties, causes of action, and rights asserted—not merely similar legal theories or overlapping defendants."]; *id.* at 9 ["California law is clear: the exclusive concurrent jurisdiction doctrine applies only when both actions are substantially identical in all key respects—not merely similar."].)

Plaintiff's argument was groundless.  California law is clear that the *opposite* is true:  the actions need *not* be "substantially identical" for the doctrine to apply.  Thus, in *Shaw v. Superior Court* (2022) 78 Cal.App.5th 245, which held that the doctrine of exclusive concurrent jurisdiction applies to representative actions brought under PAGA, the court quoted with approval authority so holding:

> Although the rule of exclusive concurrent jurisdiction is similar in effect to the statutory plea in abatement, it has been interpreted and applied more expansively, and therefore may apply where the narrow grounds for a statutory plea in abatement do not exist.  Unlike the statutory plea in abatement, the rule of exclusive concurrent jurisdiction does not require absolute identity of

1         parties, causes of action or remedies sought in the initial and subsequent actions. If the court
2    exercising original jurisdiction has the power to bring before it all the necessary parties, the fact
     that the parties in the second action are not identical does not preclude application of the rule.
3    Moreover, the remedies sought in the separate actions need not be precisely the same so long as
     the court exercising original jurisdiction has the power to litigate all the issues and grant all the
4    relief to which any of the parties might be entitled under the pleadings.

5    (*Id.* at 256 (cleaned up), quoting *People ex rel. Garamendi v. Autoplan, Inc.* (1993) 20 Cal.App.4th 760,

6    770; accord, *Franklin & Franklin v. 7-Eleven Owners* (2000) 85 Cal.App.5th 1168, 1175 ["In keeping

7    with both the practical nature of the rule, and the historically flexible remedial powers of equity,

8    exactitude was not required. That the parties in the two actions are not entirely identical and that the

9    remedies sought by the two actions are not precisely the same is not controlling."]; *Plant Insulation Co. v.*

10   *Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 788 [collecting authorities].)

11        As set forth in the Court's Order to Show Cause, in an apparent attempt to avoid this adverse

12   authority, Plaintiff's brief cited to inaccurate case citations, fabricated quotations, and seriously

13   misrepresented controlling authority.

14        First, Plaintiff's brief repeatedly referred to *Shaw*, which is squarely on point, but with a different,

15   inaccurate citation: "(2020) 51 Cal.App.5th 543." The brief also repeatedly cited a second case, *Rilcoff v.*

16   *Superior Court* "(2021) 66 Cal.App.5th 1102." (Opposition, 7, 10, 11, 12, 13, 14, 16, 18.) **Neither**

17   **citation is accurate or even exists**: *Shaw* is actually reported at *Shaw v. Superior Court* (2022) 78

18   Cal.App.5th 245, while *Rilcoff* was decided nearly eight decades earlier than Plaintiff represented: *Rilcoff*

19   *v. Superior Court* (**1942**) 50 Cal.App.2d 503.

20        Second, Plaintiff repeatedly misrepresented the holdings of these and other cases. Thus, Plaintiff

21   miscited both the facts and holding of *Shaw*, which the Court found controlling as to Defendant's motion.

22   Plaintiff characterized *Shaw* as holding that the doctrine of exclusive concurrent jurisdiction is

23   "inapplicable where factual circumstances and claims differ." (Opposition, 7.) And Plaintiff asserted that

24   in *Shaw*, "the court denied a stay where the parties and issues were not identical, emphasizing that the

25   doctrine of exclusive concurrent jurisdiction is not triggered by mere similarity." (*Id.* at 15.) But contrary

26   to Plaintiff's argument, *Shaw* did **not** "deny" a stay; rather, it **upheld** the trial court's grant of a stay.

27   (*Shaw*, 78 Cal.App.5th at 251 ["the trial court denied petitioners' motion to lift the stay, concluding that

28   the stay was warranted under the doctrine of exclusive concurrent jurisdiction. In this writ of mandate

proceeding, we find that the trial court did not err in applying the exclusive concurrent jurisdiction rule to

this dispute."].)  Nor did *Shaw* hold that the exclusive concurrent jurisdiction doctrine is "inapplicable"

where the cases are not identical; to the contrary, it quoted with approval authority holding that "[u]nlike

the statutory plea [in] abatement, the rule of exclusive concurrent jurisdiction does not require absolute

identity of parties, causes of action or remedies sought in the initial and subsequent actions."  (*Id.* at 256,

quoting *People ex rel. Garamendi*. 20 Cal.App.4th at 770.)

        Similar blatant misrepresentations appear throughout the brief.  For example, Plaintiff argued that

in *Franklin & Franklin v. 7-Eleven Owners* (2000) 85 Cal.App.4th 1168, the court "expressly stated that a

stay was appropriate only because the actions were 'virtually identical in all material respects.'"

(Opposition, 14.)  Not only does the quoted phrase not appear in that opinion, the court's actual holding

was the exact opposite:  "In keeping with both the practical nature of the rule, and the historically flexible

remedial powers of equity, exactitude was not required.  That the parties in the two actions are not entirely

identical and that the remedies sought by the two actions are not precisely the same is not controlling."

(85 Cal.App.4th at 1175 (cleaned up).)  Similarly, Plaintiff mischaracterized *Simmons v. Superior Court*

(1950) 96 Cal.App.2d 119 as holding that a "stay [was] denied where parties and issues were not

identical."  (Opposition, 7.)  In fact, *Simmons* held exactly the opposite.  (See *Simmons*, 96 Cal.App.2d at

125 ["We think it manifest that respondent court abused its discretion in not staying, as a matter of

comity, further proceedings in the California action until the final determination of the Texas action."].)

Unfortunately, these are not the only examples of authorities that were misrepresented in the brief.

        Third, the brief contains no fewer than **eight** fabricated quotations from California cases cited by

Plaintiff.  For example, it quoted the *Shaw* court as follows: "the public interest in the enforcement of

labor laws and the protection of employees' rights outweighs the risk of inconsistent judgments where the

actions are not truly duplicative."  (Opposition, 15.)  **No such quotation appears in *Shaw*, or for that

matter in any other reported California case.**  To the contrary, *Shaw* expressed the opposite view.  (See

*Shaw*, 78 Cal.App.5th at 262 ["The trial court could reasonably conclude that the policies giving rise to

the exclusive concurrent jurisdiction rule were not outweighed by those that drove PAGA's enactment."].)

**Literally every other purported quotation in the brief, purportedly from five different cases, is**

1    **similarly fictitious**. (See Opposition, 10, 11, 14, 15.)

2        On July 8, 2025, after Defendants' motion to stay was fully briefed, the Court issued a written

3    tentative ruling granting that motion. Rather than contest the tentative ruling, Plaintiff stipulated to it, and

4    the Court adopted its tentative ruling granting the motion to stay. On July 11, 2025, the Court held a

5    hearing on the Order to Show Cause.

6                     **RESPONSE TO THE ORDER TO SHOW CAUSE**

7        In response to the Order to Show Cause, counsel of record, attorneys at the Lipeles Law Group,

8    filed declarations in which they sought to disclaim any responsibility for the inaccurate citations,

9    fabricated quotations, and misrepresentations of controlling authority. Each of those attorneys—Kevin A.

10   Lipeles, Thomas H. Schelly, and Jasmine J. Badawi—pointed the finger at James V. Sansone, a contract

11   attorney they had retained to prepare the opposition brief, whose name does not appear on the brief.

12   (Lipeles Decl. ¶ 6; Schelly Decl. ¶ 5; Badawi Decl. ¶ 5.) Counsel of record asserted that they began

13   working with Mr. Sansone in April 2024 and have worked with him for over a year. (Lipeles Decl. ¶ 6.)

14   Mr. Lipeles avers that "[i]nitially, Mr. Schelly and I reviewed his work" and found it to be "solid and

15   good quality work product." (*Id.*; see also Schelly Decl. ¶ 5 ["Initially, I, along with Kevin Lipeles,

16   reviewed [Mr. Sansone's] work product, which I found to be of good, if not high quality."].) Both Mr.

17   Lipeles and Mr. Schelly assert that they "instructed our staff attorneys to review his (as well as our other

18   contract attorneys') work." (Lipeles Decl. ¶ 6; Schelly Decl. ¶ 5.) Ms. Badawi, whom Messrs. Lipeles

19   and Schelly identify as the "handling attorney" responsible for this case, stated that she reviewed the draft

20   opposition prepared by Mr. Sansone, and that she "had no reason to question the integrity of the work

21   product," nor to believe that "the citations were inaccurate, misapplied or that the Opposition included

22   unsupported arguments." (Badawi Decl. ¶¶ 7-8.) However, Ms. Badawi did not indicate what her

23   "review" consisted of, and in particular whether she read (or was even familiar with) any of the cited

24   cases.

25        Mr. Schelly asserted that when he received the Court's Order to Show Cause, he forwarded it to

26   Mr. Sansone and asked him what happened. (Schelly Decl. ¶ 6.) He said Mr. Sansone informed him that

27   he "uses Lexis AI to check his briefs." (*Id.*) He further informed Mr. Schelly "that he re-ran the brief and

28

1    again Lexis confirmed every citation was a valid citation. However, he elaborated that he had been

2    experiencing 'issues' with Lexis." (*Id.* ¶ 7.) Mr. Sansone prepared a declaration and provided it by email

3    to Mr. Schelly, who had it printed out on the case caption and sent it back to Mr. Sansone for signature.

4    Mr. Schelly acknowledged that he did not ask Mr. Sansone about any of the statements in the declaration.

5         Mr. Sansone stated in his declaration that he prepared the brief using Lexis and Lexis Protégé, and

6    that after finalizing it, he used the Lexis Citation Check function "to verify the accuracy, validity, and

7    treatment of all cited legal authorities." (Sansone Decl. ¶¶ 2, 4.) He asserts that Lexis Citation Check is

8    "engineered to detect both false citations and altered or fabricated quotations when authorities are entered

9    into the cite-checking interface." (*Id.* ¶ 5.) He further asserts that the citation check "confirmed that all

10   authorities included in the motion were accurately cited." (*Id.* ¶ 6.) Mr. Sansone did not detail any

11   "issues" he had reportedly experienced using Lexis; to the contrary, he asserted he has "never experienced

12   citation issues of the nature raised in the Court's OSC." (*Id.* ¶ 3.)

13        Mr. Sansone insists he brings a "high level of diligence" to all his filings; that he "did not use

14   generative AI tools such as ChatGPT or any similar tool to draft, generate, or summarize case law in the

15   motion," and that his legal writing is "grounded in personal legal research and analysis, and [he] take[s]

16   pride in upholding the highest ethical standards in [his] written work." (Sansone Decl. ¶ 8.) He asserts

17   that he applied his "longstanding diligence to ensure that the legal content presented to the Court was

18   accurate and ethically sound." (*Id.* ¶ 10.) He also claims to have been "surprised and deeply concerned"

19   by the Court's assertion that the brief contains non-existent citations and fabricated quotations. (*Id.* ¶ 7.)

20        Remarkably, **Mr. Sansone did not acknowledge that the brief contains any errors at all**.

21   Critically, he did not explain why the brief contains multiple inaccurate citations to two key cases. In

22   fact, although Mr. Sansone attached to his declaration a printout of the citation check he apparently ran, it

23   does not even list *Shaw* or *Rilcoff*, although each of those cases is cited no fewer than seven times in the

24   brief. Mr. Sansone offered no explanation for why he apparently neglected to cite-check those cases. Nor

25   did he make any effort to explain how it is that no fewer than eight fabricated quotations from five

26   different cases found their way into the brief.

27        In view of these glaring omissions, the Court finds Mr. Sansone's written testimony entirely

28

1    lacking in credibility. Unless Mr. Sansone deliberately and intentionally fabricated the inaccurate

2    citations and fictitious quotations in the brief with the intent to mislead the Court and opposing counsel,

3    the only reasonable conclusion the Court can reach is that they were created by the use of a generative

4    artificial intelligence (AI) tool. Mr. Sansone's contrary representations to the Court, under penalty of

5    perjury, are incredible on their face.

6            Mr. Schelly and Ms. Badawi appeared in person at the hearing on the Order to Show Cause, while

7    Mr. Lipeles appeared remotely by Zoom. Messrs. Lipeles and Schelly are partners in the Lipeles Law

8    Group, while Ms. Badawi is a fourth-year associate with the firm. While counsel apologized for the

9    misrepresentations and invented quotations in their brief, their responses to the Court's questions were, to

10   put it mildly, disturbing.

11           Mr. Lipeles was unable to answer the Court's question about why his firm had filed duplicative

12   actions in Los Angeles and San Francisco, and suggested that maybe they weren't aware that they had

13   filed the prior lawsuit. He then suggested that the reason they had opposed Defendants' motion to stay

14   was that they were never told it was a duplicative complaint, or that they didn't realize that it was their

15   firm that had filed the first complaint. Both responses were false. In the joint case management

16   conference filed by the parties more than two months before Defendants' motion to stay was filed,

17   Defendants specifically referred to *Ascensao* as "an overlapping putative class action and representative

18   PAGA action, filed by Plaintiff's counsel in the instant action." (Joint Case Management Conference

19   Statement (filed Apr. 8, 2025), 5.)[1] Likewise, Ms. Badawi told the Court that although she had personally

20   signed the *Ascensao* complaint, she had not drafted it, and initially was unaware that her firm had filed it.

21           Ms. Badawi indicated that once she realized that her firm had filed the first complaint, Mr. Lipeles

22   indicated that they should meet to discuss how to respond to Defendants' motion to stay. However, no

23   such meeting was held. Indeed, Mr. Lipeles candidly admitted that he never read the motion and

24   apparently never realized that the prior action had been filed by his own firm. Nonetheless, Mr. Lipeles

25   directed Ms. Badawi to assign the matter to James V. Sansone, a contract attorney whom the firm had

26

---

27   [1] Following the hearing, Mr. Schelly submitted an unauthorized declaration to the Court attempting to
     explain why the firm had filed duplicative actions. Suffice it to say that the declaration contained further
28   falsehoods.

utilized in the past. Neither Mr. Lipeles nor Ms. Badawi ever gave Mr. Sansone any direction with respect to whether to oppose the motion (or, if so, on what grounds). Mr. Schelly indicated that he expected Mr. Sansone, whom he regarded as "of counsel" to the firm, to tell the firm if a motion can't or shouldn't be opposed.

Neither Mr. Lipeles nor Mr. Schelly reviewed the draft brief after Mr. Sansone prepared it. Instead, they left that task to Ms. Badawi, who read it for the "flow" of the brief, to make sure that it did not contain any grammatical or spacing errors, that it looked complete and finalized, and that the argument "made sense." She did not read any of the cases cited in the brief. Ms. Badawi acknowledged she was aware that in order for the doctrine of exclusive concurrent jurisdiction to apply, California law does not require that the two overlapping actions be identical. However, she could not explain why she did not correct that position, which was the central argument made in the brief. She acknowledged at the hearing that in hindsight, she should not have signed her name to the brief, and "should have known better."

## DISCUSSION

The conduct of *all* Plaintiff's counsel involved in this action, including both Plaintiff's counsel of record who filed and signed the brief in question and the contract attorney who prepared it, falls far short of their professional and ethical obligations, and warrants substantial sanctions.

Counsel's conduct in utilizing generative AI to prepare a brief without checking whether it contains accurate case quotations and citations is indisputably improper.[2] As has been widely reported, numerous courts across the country in the last several years have strongly criticized lawyers' careless use of generative AI to file briefs that contain "fake" citations and quotations. "Submitting fictitious cases and quotations to the court degrades or impugns the integrity of the Court and interferes with the administration of justice." (*United States v. Hayes* (E.D. Cal. 2025) 763 F.Supp.3d 1054, 1064.) As one court explained in a leading case on the subject,

> In researching and drafting court submissions, good lawyers appropriately obtain assistance from junior attorneys, law students, contract lawyers, legal encyclopedias and databases such as

---

[2] Needless to say, if counsel instead deliberately fabricated case quotations and miscited cases rather than relying on generative AI to do so, that would be even worse. Either way, counsel engaged in serious misconduct.

Westlaw and LexisNexis. Technological advances are commonplace and there is nothing inherently improper about using a reliable artificial intelligence tool for assistance. But existing rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings. [Respondents] abandoned their responsibilities when they submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT, then continued to stand by the fake opinions after judicial orders called their existence into question.

Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

(*Mata v. Avianca, Inc.* (S.D.N.Y. 2023) 678 F.Supp.3d 443, 448 (cleaned up); see also, e.g., *Park v. Kim* (2d Cir. 2024) 91 F.4th 610, 615 ["A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." (cleaned up)].)[3]

Blind reliance on generative AI to prepare a court filing, without evaluating and checking its output, violates lawyers' professional and ethical obligations, including their duty of candor to the Court. (*United States v. Hayes,* 763 F.Supp.3d at 1064 [submitting fictitious cases and quotations to the court "violates California Rules of Professional Conduct 3.1(a)(2), 3.3(a)(1), and 3.3(a)(2)]; see Bus. & Prof. Code § 6068(d) [duty of attorney "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law"]; Cal. Rules of Prof. Conduct, rules 3.1(a)(2), 3.3(a)(1), 3.3(a)(2) ["A lawyer shall not present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of the existing law"; "A lawyer shall not knowingly make a false statement of fact or law to a tribunal"; "A lawyer shall not . . . knowingly misquote to a tribunal the language of a book, statute, decision or other authority."].)

Further, as both the American Bar Association and the State Bar of California have warned, it also violates a lawyer's duty of competence, which requires that lawyers review and evaluate the output produced by generative AI before submitting it to a court. (ABA Form. Opn. 2024-512, Generative

---

[3] The misuse of generative AI in the legal profession is widespread. See "England's High Court Warns Lawyers to Stop Citing Fake A.I.-Generated Cases," *The New York Times* (June 6, 2025).

1    Artificial Intelligence (July 29, 2024); State Bar of California, Standing Committee on Professional

2    Responsibility and Conduct, "Practical Guidance for the Use of Generative Artificial Intelligence in the

3    Practice of Law," available at www.calbar.ca.gov.)

4         Here, Mr. Sansone's conduct is particularly blameworthy because not only did he evidently utilize

5    generative AI to prepare the brief in question, he denied under oath having done so.  His conduct is

6    comparable to (or even worse than) that of the responsible attorneys in *Mata*, who initially did not "come

7    clean" about their actions after the court questioned the existence of the fake cases, but instead "doubled

8    down and did not begin to dribble out the truth" until after the court issued an order to show cause re

9    sanctions.  (678 F.Supp.3d at 449.)  In *Mata*, the attorneys ultimately admitted that they had submitted

10   fake cases and quotations, and expressed remorse and apologized to the court.  In contrast, Mr. Sansone

11   boldly asserts that he "did not use generative AI tools such as ChatGPT or any similar tool to draft,

12   generate, or summarize case law in the motion," and that his legal writing is "grounded in personal legal

13   research and analysis."  (Sansone Decl. ¶ 8.)  "The Court finds this response inadequate and not credible.

14   Though [Mr. Sansone] admits that he drafted his filing with the fictitious case[s] and quotation[s], he fails

15   to explain where or how he found or created the fictitious case[s] and quotation[s]."  (*United States v.*

16   *Hayes*, 763 F.Supp.3d at 1065.)  In any event, the Court "need not make any finding as to whether [Mr.

17   Sansone] actually used generative AI to draft any portion" of the brief, including the fictitious cases and

18   quotations.  "Citing nonexistent case law or misrepresenting the holdings of a case is making a false

19   statement to a court.  It does not matter if [generative AI] told you so."  (*Id.* at 1066-1067 (cleaned up).)

20        Plaintiff's counsel of record are not absolved of responsibility merely because they outsourced

21   preparation of the brief to Mr. Sansone.  By filing a brief with the court, an attorney certifies that "to the

22   best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

23   circumstances," "[t]he claims, defenses, and other legal contentions therein are warranted by existing law

24   or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the

25   establishment of new law."  (Code Civ. Proc. § 128.7(b)(2).)  Counsel of record's names appeared on the

26   brief, and one of them signed it.  Thus, as counsel acknowledged at the hearing, they bear ultimate

27   responsibility for the accuracy and reliability of the brief.  They are therefore responsible for the

28

- 10 -

1    misrepresentations of authority and fake case quotations it contained.[4]

2         Notably, the undisputed facts regarding the Lipeles Law Group's conduct here are remarkably

3    similar to those in *Mata*. Here, as in that case, the lawyer who signed the opposition containing the fake

4    citations quotations "was not its author," which was researched and written by a different attorney; here,

5    as there, the signing attorney "reviewed the [brief] for style, stating, 'I was basically looking for a flow,

6    make sure there was nothing untoward or no large grammatical errors'"; here, as there, the signing

7    attorney "did not review any judicial authorities cited" in the brief; and here, as there, "[t]here is no claim

8    or evidence that [the signing attorney] made any inquiry of [the author] as to the nature and extent of his

9    research or whether he had found contrary precedent," but instead "simply relied on a belief that the work

10   produced" by the author "would be reliable." (678 F.Supp.3d at 450.) And here, exactly as in *Mata*, there

11   is "no evidence" that Mr. Schelly asked Mr. Sansone "a single question" about his false declaration (*id.*);[5]

12   in that declaration, as discussed above, he denied that he had used generative AI to prepare the brief but

13   failed to provide any explanation for the fake cases and numerous fake quotations. The *Mata* court found

14   it appropriate to sanction all responsible counsel. (*Id.* at 465-466.) So too here.

15        Finally, the Court finds that Plaintiff's counsel of record essentially abdicated their duty of

16   competence to their client as well as their duty to the Court. "[E]ven when work on a case is performed

17   by an experienced attorney, competent representation still requires knowing enough about the subject

18   matter to be able to judge the quality of the attorney's work." (*Cole v. Patricia A. Meyer & Assocs., APC*

19   (2012) 206 Cal.App.4th 1095, 1100, 1115-1116 [counsel of record for plaintiffs could not avoid liability

20   for malicious prosecution merely by showing that they took a passive role in the case as "standby

21   counsel" who would try the case in the event it went to trial and relied on lead counsel's assessment of

22   probable cause; counsel of record had "a duty of care to their clients that encompassed both a knowledge

23   of the law and an obligation of diligent research and informed judgment" (cleaned up)].) Yet Plaintiff's

24

---

25   [4] That conclusion is also supported by the Rules of Professional Conduct, which provide that a lawyer
     having "direct supervisory authority" over another lawyer (whether or not a member or employee of the
26   same law firm) must make "reasonable efforts to ensure that the other lawyer complies" with the Rules
     and the State Bar Act. (Cal. Rules of Prof. Conduct, rule 5.1(b).) An attorney must also supervise
27   contract or temporary lawyers hired to provide legal services to the attorney's clients. (Cal. State Bar
     Form. Opn. 2004-165 (construing former rule).)
28   [5] Ms. Badawi attempted to question Mr. Sansone. However, he evaded her attempts to contact him.

1    counsel of record never undertook to determine whether Defendants' motion to stay was meritorious,

2    never made any independent determination whether to oppose the motion, never gave Mr. Sansone any

3    direction in that regard, and did not adequately review his work.

4        The Court finds that the conduct described above constitutes serious violations of Section 128.7(b)

5    as well as of counsel's ethical and professional obligations under the Rules of Professional Conduct.  This

6    finding applies both to Mr. Sansone, who prepared the brief, and to Plaintiff's counsel of record, who

7    filed it with the Court and, pursuant to Section 128.7, thereby certified that it was "warranted by existing

8    law."  The Court further finds that the conduct warrants substantial sanctions and other relief, which it

9    finds is necessary to deter repetition of this conduct or comparable conduct by others similarly situated.

10

11                        **ORDER AND CONCLUSION**

12        For the foregoing reasons, the Court hereby orders as follows:

13        1.      Lipeles Law Group, APC and attorneys Kevin A. Lipeles, Thomas H. Schelly, and Jasmine

14    J. Badawi, jointly and severally, shall pay monetary sanctions in the amount of $5,000 to Defendants and

15    $1,000 payable into the Court.  Such sanctions shall be paid within ten days of entry of this Order.

16        2.      Plaintiff's counsel shall serve a copy of this Order on their client in this case, and shall file

17    a proof of service with the Court.

18        3.      Plaintiff's counsel shall serve a copy of this Order on the Superior Court Judge in Los

19    Angeles County presiding over the *Ascensao* action within 10 days of entry of this Order, and shall file a

20    proof of service with this Court.

21        4.      Plaintiff's counsel shall serve a copy of this Order on any Judge of this Court before whom

22    they appear in any action pending or filed in this Court within one year from the date of entry of this

23    Order.

24        IT IS SO ORDERED.

25

26    Dated: July 16, 2025

                                    Ethan P. Schulman
                                    Judge of the Superior Court

27

28

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On July 16, 2025, I electronically served ORDER RE SANCTIONS via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:    **JUL 1 6 2025**

Brandon E. Riley, Court Executive Officer

By: _Felicia Green_
_____
Felicia Green, Deputy Clerk

**LIPELES LAW GROUP, APC**
880 Apollo St., Suite 336
El Segundo, CA 90245

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is Lipeles Law Group APC, 880 Apollo Street, Suite 336, El Segundo, CA 90245. On the date below, I served the foregoing document(s) described as:

### NOTICE OF RULING

By sending a true copy thereof to the address listed below:

### SEE ATTACHED SERVICE LIST

■   **By Messenger Service.** I served the documents by providing them to a professional messenger service for personal service.

☐   **By Overnight Delivery.** I deposited a sealed envelope containing a true and correct copy of the documents listed above for overnight delivery and with the postage fully prepaid.

☐   **By E-Mail or Electronic Transmission.** I caused the documents to be sent to the persons at the email address listed above in a PDF file, and the transmission appeared to be successful.

☐   **By United States Mail.** I deposited a sealed envelope containing a true and correct copy of the documents listed above with the United States Postal Service with the postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at El Segundo, California.

☐   **By Fax Transmission.** I faxed the documents to the persons at the fax number listed above, and the transmission appeared to be successful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 22, 2025 at El Segundo, California.

*Grace Munguia*
Grace Munguia

PROOF OF SERVICE

## SERVICE LIST
### Lawrence v. United Airlines, Inc.
### San Francisco Superior Court Case No. CGC-25-627086


**UNITED AIRLINES, INC.**
AGENT:  CSC – LAWYERS INCORPORATING SERVICE
2710 GATEWAY OAKS DRIVE
SACRAMENTO, CA 95833